# In the United States Court of Federal Claims

No. 16-314L

(Filed: June 27, 2018)

```
*************************************
                                    *
1100 W. EWING ASSOC., LLC,          *
                                    *
ARGONAUT PROPERTIES, INC.,          *
                                    *
                     Plaintiffs,    *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
                     Defendant.     *
                                    *
*************************************
```

Rails to Trails Case; National Trails System Act, 16 U.S.C. § 1241 (2006); Washington State Property Law; Deed Interpretation; Easement; Fee Simple.

*Thomas S. Stewart*, with whom were *Elizabeth McCulley*, *Steven M. Wald*, and *Michael J. Smith*, Stewart Wald & McCulley, LLC, Kansas City and St. Louis, Missouri, for Plaintiffs.

*Kristine S. Tardiff*, with whom was *Jeffrey H. Wood*, Acting Assistant Attorney General, Natural Resources Section, Environmental and Natural Resources Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

The Plaintiffs in this "rails-to-trails" case seek just compensation for an alleged Fifth Amendment taking of their reversionary property interests in segments of a dormant rail corridor under the National Trails System Act. The Plaintiffs argue that their predecessors-in-interest conveyed only an easement in the rail corridor to the railroad company and the Government's contemplated conversion of the rail corridor to recreational trails amounts to a taking of their property. In response, the Government argues that the Plaintiffs have no cognizable property interest in the rail corridor because their predecessors-in-interest conveyed a fee simple to the railroad company. As explained below, the Court finds that the Plaintiffs' predecessors-in-interest conveyed the relevant segments of the rail corridor

to the railroad in fee simple.  Since the Plaintiffs have no cognizable property interest in the rail corridor, the Court GRANTS the Government's cross-motion for summary judgment and DENIES Plaintiffs' motion for partial summary judgment.

Background

A.  History of the Nation's Railroads and the National Trails System Act

The Interstate Commerce Act of 1887 gives the Surface Transportation Board ("STB") exclusive and plenary authority over the construction, operation and abandonment of the nation's rail lines.  Chicago & Nw. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 312 (1981).  A railroad company may not cease to provide service on a particular rail line without first receiving express consent from the STB.  Colorado v. United States, 271 U.S. 153, 165 (1926).  Historically, a railroad company had two options if it wished to stop providing rail line service.  First, it could apply to the STB for permission to "cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future."  Preseault v. ICC, 494 U.S. 1, 5 n.3 (1990) ("Preseault I").  Alternatively, a railroad company could seek permission to permanently terminate service by initiating abandonment proceedings.  If the STB approved the abandonment, the rail line was removed from the national transportation system and the STB's jurisdiction over the underlying land ended.  Id.; Hayfield N. R.R. Co., Inc. v. Nw. Transp. Co., 467 U.S. 622, 633 (1984).  State law then governed the disposition of the underlying land.  Preseault I, 494 U.S. at 5–6.

Concerned about the loss of property interests in the nation's rail corridors, Congress enacted the National Trails System Act Amendments of 1983 to the National Trails Act of 1968.  16 U.S.C. § 1241 et seq. (2006) ("Trails Act").  Section 8(d) of the Trails Act provided an alternative to initiating abandonment proceedings called "railbanking".  Preseault I, 494 U.S. at 6.  Railbanking allows a third party to temporarily convert the rail line to a recreational trail and "assume full responsibility" for the management of the right-of-way while preserving the right-of-way for future rail line use. 16 U.S.C. § 1247; Preseault I, 494 U.S. at 6–7.  In order for a rail corridor to be railbanked, a railroad must first initiate the STB's abandonment process.  49 C.F.R. §§ 1152.29, 1152.50.  Then, a party interested in acquiring the corridor for railbanking must request that the STB issue a Certificate of Interim Trail Use ("CITU") or a Notice of Interim Trail Use ("NITU").  49 C.F.R. § 1152.29(c)–(d).  The purpose of the CITU or NITU is to preserve the STB's jurisdiction and prevent the application of state reversionary property law.  Caldwell v. United States, 391 F.3d 1226, 1229–30 (Fed. Cir. 2004).  If the railroad is willing to negotiate a railbanking agreement, the STB will issue the CITU or NITU. Preseault I, 494 U.S. at 7 n.5.  If negotiations are successful, the STB suspends

2

abandonment proceedings and the interested third party establishes recreational trails on the rail corridor. The Trail Act states that interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). If negotiations are unsuccessful, the railroad may continue to pursue abandonment proceedings before the STB. 49 C.F.R. § 1152.29(d)(1).

The Trails Act's railbanking provision has created a new category of Fifth Amendment takings cases before this Court, referred to as "rails-to-trails" cases. See Pls.' Mot. at 7 n.8 (listing cases in which plaintiffs seek relief for an uncompensated taking under the Trails Act). The Preseault cases are the seminal cases establishing the existence of a takings claim under the Trails Act. Preseault I, 494 U.S. 1; Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996) ("Preseault II"). The Preseaults were Vermont property owners with land adjacent to the Vermont Railway's railroad easement. The Government issued a CITU allowing the rail line to be converted to a trail, and the Preseaults challenged the constitutionality of the CITU in federal court. Preseault I, 494 U.S. at 2–4. In Preseault I, the Supreme Court unanimously held that railbanking under the Trails Act gave rise to just compensation claims under the Fifth Amendment because the Trails Act prevented property interests from reverting under state law. 494 U.S. at 13. The Preseaults then filed a takings claim before this Court which was dismissed because the Preseaults "had no reasonable expectation of obtaining a reversion by operation of state law." Preseault v. United States, 27 Fed. Cl. 69, 92 (1992). The Federal Circuit reversed and remanded, holding that the operative question is whether the conversion of the right-of-way to a recreational trail constituted a taking given the scope of the railroad's *initial* easement, not the expectations of the current landowners. Preseault II, 100 F.3d at 1542–44.

## B. Relevant Facts of This Case

The rail corridor at issue in this case was originally acquired in the 1880s as part of the development of the Seattle, Lake Shore and Eastern Railway Company. See Def.'s Cross-Mot. at 5; Pls.' Mot. at 10. In order to secure rights to the land needed to construct rail lines, the Seattle, Lake Shore and Eastern Railway Company successfully sought deeds from property owners adjacent to the rail corridor (called "source deeds"). Def.'s Cross-Mot. at 5–6; Pls.' Mot. at 10. Through various purchases and consolidations, BNSF Railway Company ("BNSF") eventually became the successor-in-interest to the Seattle, Lake Shore and Eastern Railway Company. See Def.'s Cross-Mot. at 6; Pls.' Mot. at 10.

This case involves six parcels of land adjacent to the rail corridor at issue, one parcel abutting Plaintiff 1100 W. Ewing Assoc., LLC's ("1100 W. Ewing") property, and the other five abutting Plaintiff Argonaut Properties, Inc.'s ("Argonaut") property. Pls.' Mot. at 13. The parties have stipulated that two source deeds are applicable to Plaintiffs' parcels of land. The first source deed, dated June 25, 1885, is from Daniel H. Gilman to the Seattle,

Lake Shore and Eastern Railway Company ("Gilman Deed") and conveys interest in property known as "NARA Parcel 6." Id. NARA Parcel 6 currently adjoins 1100 W. Ewing's only parcel of land (Claim No. 1) and three of Argonaut's parcels of land (Claim Nos. 2.A, 2.B, and 2.C) at issue in this case. Id. The second source deed, dated March 5, 1887, is from Mary J. Ross to the Seattle, Lake Shore and Eastern Railway Company ("Ross Deed") and conveys interest in property known as NARA Parcel 8. See Def.'s Cross-Mot. at 6; Pls.' Mot. at 13. NARA Parcel 8 currently adjoins Argonaut's remaining two parcels of land (Claim Nos. 2.D and 2.E) at issue. Pls.' Mot. at 13. Both parties agree that the Gilman and Ross Deeds are dispositive of BNSF and Plaintiffs' ownership interest in the rail corridor abutting Plaintiffs' property. See Def.'s Cross-Mot. at 11; Pls.' Mot. at 15.

On July 10, 2015, BNSF filed a Notice of Exemption with the STB, initiating proceedings to abandon 1,100 linear feet of the rail line along the rail corridor located in Seattle, Kings County, Washington. Def.'s Cross-Mot., Ex. 8. On August 20, 2015, the City of Seattle filed a request with the STB for the issuance of an NITU in order to negotiate railbanking and the conversion of the rail corridor into a recreational trail under the Trails Act. Id. at 7; Pls.' Mot. at 11. BNSF did not object to the City's request, and on September 17, 2015, the STB issued a NITU and imposed a public use condition. See Def.'s Cross-Mot. at 7; Pls.' Mot., Ex. D. The NITU provided a 180-day period for the City and BNSF to negotiate an agreement for interim trail use and railbanking of the corridor, and the public use condition allowed for BNSF to negotiate with other outside parties for the acquisition of the corridor for public purposes. Def.'s Cross-Mot. at 7. If no such agreement was reached before the 180 days expired, the NITU allowed BNSF to abandon the corridor. Id. After the City of Seattle applied for several extensions, the STB extended the negotiation period to September 1, 2018. Def.'s Rep. at 14. As of this date, BNSF has neither reached an agreement with the City nor abandoned the rail corridor.

Procedural History

On March 10, 2016, Plaintiffs filed a complaint in this Court (which was later amended twice), seeking just compensation for an alleged Fifth Amendment taking of their reversionary property interests in segments of the rail corridor described above. After the conclusion of discovery, the parties filed a joint status report on September 13, 2017, requesting to file cross-motions for summary judgment on "the threshold questions of whether the railroad acquired fee simple title or an easement to the pertinent segments of the subject railroad corridor right-of-way . . . ." Dkt. No. 25. The Court granted the request the following day. See Dkt. No. 26.

However, both parties' cross-motions included briefing on additional issues beyond this threshold title issue. As such, the Court issued an Order on May 11, 2018 limiting its

4

current disposition to deciding whether the Gilman and Ross Deeds conveyed a fee simple interest or easement to the railroad and, if necessary, deferring ruling on all other issues to a later date and forum. See Dkt. No. 47. In so doing, the Court also granted two of the Government's motions to strike Plaintiffs' expert affidavits (Dkt. Nos. 37, 44), as the affidavits related to non-threshold title issues. See Dkt. No. 47. The parties completed briefing the threshold title issue on April 6, 2018, and the Court held oral argument on June 19, 2018.

Discussion

Summary judgment should be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." RCFC 56(a). A fact is "material" if it might significantly alter the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing that there exists no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment will not be granted if the "evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The Fifth Amendment of the U.S. Constitution states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. In order to successfully allege a Fifth Amendment taking upon the issuance of a NITU, plaintiffs must prove that "state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." Caldwell, 391 F.3d at 1228 (citing Preseault II, 100 F.3d at 1543). Following Preseault II, the Federal Circuit developed a three-part liability test for whether a plaintiff is entitled to compensation in a rails-to-trails case. First, plaintiffs must show that they have an ownership interest in the segments of the rail corridor where the railroad company possesses an easement. Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009). If the railroad company owns the pertinent portion of the rail corridor in fee simple, then the Government has no takings liability. Preseault II, 100 F.3d at 1533. Second, if the railroad only possesses an easement, Plaintiffs must show that trail use falls outside the scope of the easement. Ellamae Phillips Co., 564 F.3d at 1373. Finally, even if trail use is within the scope of the easement, plaintiffs may still prevail if the rail corridor was abandoned before the STB issued the

5

CITU or NITU.  Id.  As the Court explained above, only the first part of the test is currently at issue before the Court.  See Dkt. No. 47.

Given the parties' agreement that the Gilman Deed and the Ross Deed are dispositive of the property interests relevant in this case, determining the property interests of the parties is purely a matter of deed interpretation.  See Def.'s Cross-Mot. at 11; Pls.' Mot. at 15.  Therefore, summary judgment is appropriate in this case.  RCFC 56(a).

<u>Analysis of Gilman and Ross Deeds</u>

In order to address the first part of the Ellamae Phillips Co. liability test, the Court must decide whether the Gilman Deed and the Ross Deed conveyed BNSF's predecessor-in-interest fee simple interests or easements.  If BNSF owns the relevant segments of the rail corridors in fee simple, then the Government cannot have committed a Fifth Amendment taking of the Plaintiffs' property by issuing the NITU and the Court need go no further.  Ellamae Phillips Co., 564 F.3d at 1373; Preseault II, 100 F.3d at 1533.

Washington State property law governs the interpretation of the two deeds in this case.  Preseault I, 494 U.S. at 8, 16; Rogers v. United States, 814 F.3d 1299, 1305 (Fed. Cir. 2015) ("We analyze the property rights of the parties in a rails-to-trails case under the relevant state law.").  Under Washington law, the interpretation of a deed is a mixed question of law and fact.  See Veach v. Culp, 599 P.2d 526, 527 (Wash. 1979); Lawson v. State of Washington, 730 P.2d 1308, 1311–12 (Wash. 1986).  Throughout the twentieth century, the Washington Supreme Court struggled to articulate a clear and consistent method for construing deeds like the ones at issue in this case.  See, e.g., Brown v. State, 924 P.2d 908, 911 (Wash. 1996) ("Many courts have considered whether a railroad deed conveys fee simple or an easement. . . . The decisions are in considerable disarray and usually turn on a case-by-case examination of each deed." (citation omitted)); Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d 16, 21 (Wash. 2006) ("Throughout the 20th century, railroad deeds posed a recurring problem for courts, promoting our court to opine that '[t]he authorities are in hopeless conflict' and, in large part, 'cannot be reconciled.'" (quoting Swan v. O'Leary, 225 P.2d 199, 200 (Wash. 1950))); see also Beres v. United States, 97 Fed. Cl. 757, 767 (2011); Haggart v. United States, 108 Fed. Cl. 70, 86 (2012).  Despite its difficulties, the Washington Supreme Court has consistently held that when construing deeds, its "principle aim is to effect and enforce the intent of the parties."  Kershaw Sunnyside Ranches, 126 P.3d at 21 (citing Brown, 924 P.2d at 911–12).

In order to ascertain whether the parties intended to convey a fee simple interest or an easement, the Washington Supreme Court in 1950 attempted to lay down a bright-line rule in Swan:

We think when [Morsbach v. Thurston County, 278 P. 686 (Wash. 1929)] is critically read and considered with the precise question we have before us, it is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.

Swan, 225 P.2d at 201.  Applying this rule, the Swan court found that a quitclaim deed conveying "for the purpose of a Railroad right-of-way . . . a strip of land 50 feet in width" in the granting clause conveyed an easement and not a fee simple. Id. at 199.  After Swan, the Washington Supreme Court gave special consideration to the term "right of way" in deeds, holding that the presence of such language in the granting clause strongly favored the conveyance of an easement.  See Veach, 599 P.2d at 527 (finding an easement where the granting clause conveyed "[a] right-of-way one hundred feet wide . . . excepting all rights for road purposes that may have been conveyed to [the County] and reserving all littoral and riparian rights to [the grantors]"); Roeder Co. v. Burlington Northern, Inc., 716 P.2d 855, 859–60 (Wash. 1986) (finding an easement where the granting clause conveyed "for all railroad and other right of way purposes, certain tracts and parcels of land situate in the City of Bellingham . . . "); Kershaw Sunnyside Ranches, 126 P.3d at 17, 25 (finding an easement where the granting clause conveyed "a strip of land seventy five feet wide . . . to be used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same").[1]

The Washington Supreme Court further developed its railroad deed interpretation jurisprudence in 1996 in Brown, 924 P.2d 908.  In Brown, the court reiterated that "the intent of the parties is of paramount importance" when construing railroad deeds and that the phrase "right of way" is given "special significance."  Id. at 912.  However, the court

---

[1] The Washington Supreme Court appears to have followed this same trend before it decided Swan, although Swan was the first case to clearly articulate the principal that the presence of the term "right-of-way" in a granting clause favored the conveyance of an easement.  See Biles v. Tacoma, O. & G. H. R. Co., 32 P. 211, 212 (Wash. 1893) (finding an easement where the granting clause conveyed "a strip of land extending through the same . . . to be used for a right of way or other railroad purposes . . ."); Reichenbach v. Washington Short-Line Ry. Co., 38 P. 1126, 1126 (Wash. 1894) (finding an easement where the granting clause conveyed "a right of way for said railroad"); Morsbach, 278 P. at 687 (finding an easement where the granting clause conveyed "[a] right of way for the construction of said company's railroad . . .").

also found that where a deed adopted a certain statutory form under Washington law[2] and the granting clause conveyed "a definite strip[] of land," the court must find that the grantors intended to convey a fee simple interest "unless additional language in the deed[] clearly and expressly limits or qualifies the interest conveyed." Id. (footnote omitted); see also id. at 915. The court then set out seven factors to determine whether the language in the remainder of the deed limited the conveyance of land to an easement:

> (1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.

Id. at 912. The court further noted that in addition to the language of the deed itself, it would also "look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties." Id. (citations omitted). Using this new test, the Brown court found that the deed at issue conveyed a fee simple based on the fact that the deed adopted the "statutory warranty form" and conveyed definite strips of land without any further limitations or qualifications, unlike the deeds in earlier cases that contained limiting language (e.g., "right of way") in the granting or habendum clauses. Id. at 914–15. Lastly, the court explained that while a deed can have a "manifest purpose" to convey land for rail lines, this purpose does not prohibit a railroad from holding rights of way in fee simple. Id. at 915.

The Washington Supreme Court most recently clarified its test for determining whether a railroad deed conveys a fee simple interest or an easement in Kershaw Sunnyside Ranches, 126 P.3d 16. In Kershaw Sunnyside Ranches, the court held that the presence of

---

[2] Under Washington law, if a deed is "substantially in" the statutory form for a warranty deed or a bargain and sale deed, the deed operates to convey a fee simple estate. See WAS. REV. CODE §§ 64.04.030, .040 (formally Excerpt of Laws of Washington Territory, 1886 pp. 177–78, §§ 3, 4).

limiting phrases like "right of way" and "railroad purposes" in the granting clause of a deed—even if the deed is in a certain statutory form—creates the presumption of an easement.[3]  Id. at 24–25; see also Haggart, 108 Fed. Cl. at 87.  This presumption can then be rebutted by using the Brown factors to analyze the remainder of the deed for any language cutting against the intention to convey an easement.  Kershaw Sunnyside Ranches, 126 P.3d at 24–25.  Moreover, the court noted that "[w]hile the use of the term 'right of way' in the granting clause is not *solely* determinative of the estate conveyed, it remains highly relevant, especially given the fact that it is used to define the purpose of the grant."  Id. at 25 (emphasis in original).  Having analyzed the deed at issue accordingly, the Kershaw court found that the deed conveyed an easement to the railroad because the granting clause conveyed "a strip of land . . . to be used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same," and the remainder of the deed did not provide enough evidence to overcome the presumption of an easement created by this limiting language.  Id. at 18, 24–25.

This Court has twice had the occasion of interpreting railroad deeds under Washington State law to determine whether fee simple interests or easements were conveyed: first, in Beres, 97 Fed. Cl. 757; and second, in Haggart, 108 Fed. Cl. 70.  In both cases, pursuant to Kershaw Sunnyside Ranches, the Court first analyzed the granting clauses of the deeds at issue to identify any limiting language creating the presumption of an easement.  See Beres, 97 Fed. Cl. at 805–06; Haggart, 108 Fed. Cl. at 87.  Having concluded in each case that such language was present, the Court then employed the seven Brown factors to analyze the remainder of the deeds to determine whether the presumption of an easement had been rebutted.  See Beres, 97 Fed. Cl. at 806–09; Haggart, 108 Fed. Cl. at 88–94.  In each case, the Court weighed the Brown factors and concluded that the remainder of the deeds did not provide enough evidence to rebut the presumption that the grantors intended to convey easements to the railroad.  See Beres, 97 Fed. Cl. at 809; Haggart, 108 Fed. Cl. at 88–94, 98.

Following the methods employed by this Court in Beres and Haggart pursuant to the Washington Supreme Court's holdings in Brown and Kershaw Sunnyside Ranches, the Court now endeavors to interpret the two source deeds at issue in this case to determine whether they conveyed fee simple interests or easements to the railroad.

---

[3] Kershaw Sunnyside Ranches did not overturn Brown.  See Kershaw Sunnyside Ranches, 126 P.3d at 24–25.  Thus, Brown's holding that the use of a statutory warranty or bargain and sale deed creates the rebuttable presumption of a fee simple conveyance is still valid law.  See Beres, 97 Fed. Cl. at 782.

A. **1100 W. Ewing and Argonaut Do Not Have a Cognizable Property Interest in the Relevant Portions of the Rail Corridor Adjacent to Their Property Because the Gilman Deed Conveyed the Rail Corridor in Fee Simple.**

The pertinent language in the Gilman Deed is as follows:

> Witnesseth that the said party of the first part for and in consideration of the sum of Five Hundred and Twenty Five Thousands of Dollars to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged and of the performance by the party of the second part of the conditions named in the agreements hereinafter mentioned, does by these presents grant, bargain, sell and convey unto the said party of the second part and to its successors and assigns forever.

> All that certain tract of land and the tide flats in front thereof and the riparian rights attached thereto bounded and described as follows to wit:  A strip of land one hundred feet in width bounded in front by the United States Government meander line of Elliott Bay in from of Lots one (1) and two (2) Section Twenty three (23) and Lot one (1) of Section Twenty Four (24) Township Twenty Five (25) North Range three (3) east.   Willamette Meridian, King County, Washington Territory.

> The right of way for a railroad mentioned in the Agreement hereinafter referred to, is also hereby granted and conveyed to said party of the second part.

> The title of the party of the first part to said property and rights is derived from an agreement made and entered between Harry A. Smith and the party of the first part on the 23rd day of March, 1885 . . . .  It is hereby expressly stipulated that the party of the second part must comply with all the Conditions by which the part of the first part is bound in said agreement.

> . . .

> To have and to hold all singular the said premises,
> together with appurtenances, unto the said party of the second
> part and its successors and assigns forever.

Pls.' Mot. at 15–16, Ex. F; Def.'s Cross-Mot. at 17, Ex. 4.  Pursuant to <u>Kershaw Sunnyside Ranches</u>, the Court will first examine the granting clause of the deed and then turn to the <u>Brown</u> factors to determine if the remainder of the deed rebuts any presumptions created by the granting clause.

1. <u>The Gilman Deed's Granting Clauses Support the Rebuttable Presumption that the Deed Conveyed a Fee Simple Interest.</u>

The Court first notes that the Gilman Deed is "substantially in" the statutory form for a bargain and sale deed under Washington law because it purports to "bargain[], sell[], and convey[]" a strip of land "for and in consideration" of a certain sum of money "in hand paid." Was. Rev. Code § 64.04.040 (formerly Excerpt of Laws of Washington Territory, 1886 p. 178 § 4); <u>see also</u> Def.'s Cross-Mot. at 17 n.7.  Absent any express limiting language in the remainder of the deed, particularly in the granting clause, deeds adopting this statutory form convey fee simple interests under Washington law.  <u>See</u> Was. Rev. Code § 64.04.040; <u>see also</u> <u>Brown</u>, 924 P.2d at 912.  Thus, pursuant to <u>Kershaw Sunnyside Ranches</u>, the Court must next determine whether there is any limiting language in the granting clause creating the rebuttable presumption that the Gilman Deed conveyed an easement despite the fact that the deed is in the bargain and sale statutory form.  126 P.3d at 24–25.

There are two granting clauses in the Gilman Deed.  The first granting clause conveys "[a] strip of land One Hundred feet in width bounded in front by the United States Government meander line of Elliott Bay in from of Lots one (1) and two (2) Section Twenty three (23) and Lot one (1) of Section Twenty Four (24) Township Twenty Five (25) North Range three (3) east.  Willamette Meridian, King County, Washington Territory." Pls.' Mot. at 15–16, Ex. F; Def.'s Cross-Mot. at 17, Ex. 4.  The second granting clause states, "[t]he right of way for a railroad mentioned in the Agreement hereinafter referred to, is also hereby granted and conveyed . . . ."[4] Pls.' Mot. at 15–16, Ex. F; Def.'s Cross-Mot. at 17, Ex. 4.  It is not entirely clear to the Court which granting clause actually conveyed Plaintiffs' relevant parcels of property at issue in this case under the Gilman Deed (Claim Nos. 1, 2.A, 2.B, and 2.C).  However, the Court need not resolve this issue because it

---

[4] The "Agreement" referred to in this granting clause is an agreement between Henry A. Smith and Daniel H. Gilman dated March 28, 1885 ("Smith Agreement"), in which Mr. Smith conveyed certain parcels of land and other property rights to Mr. Gilman prior to Mr. Gilman's granting of land to the railroad.  <u>See</u> Pls.' Rep., Ex. A; Def.'s Cross-Mot. at 18, Ex. 6.

reaches the same conclusion after analyzing both clauses:  both granting clauses favor the conveyance of a fee simple interest.

The first granting clause does not contain any limiting language that would support the intent to convey only an easement to the railroad.  In fact, the clause conveys a definite "strip of land" with no conditions or limitations attached whatsoever.  Def.'s Cross-Mot. at 17, Ex. 4.  The clause is devoid of any limiting phrases like "right of way" or "for railroad purposes" and thus, coupled with the fact that the deed is a bargain and sale deed, the first granting clause unambiguously creates the presumption that the grantor intended to convey the "strip of land" to the railroad in fee simple.  See Brown, 924 P.2d at 912.

The second granting clause likewise supports the conveyance of a fee simple interest.  Plaintiffs argue that because the granting clause conveys "[t]he right of way for a railroad," the deed automatically conveys an easement to the railroad under Washington law.  See Pls.' Mot. at 32 ("[T]he grant of 'the rights of way for a railroad' are all that is needed for a determination tha[t] an easement was conveyed.").  Such is not the case.  In making their argument, Plaintiffs overgeneralize Washington law.  Indeed, the Washington Supreme Court stated the exact opposite in Kershaw Sunnyside Ranches when it held that "the use of the term 'right of way' in the granting clause is not *solely* determinative of the estate conveyed . . ." and that the Court must also weigh the other language in the deed. 126 P.3d at 25 (emphasis in original).  Moreover, the Washington Supreme Court explicitly held in Brown, en banc, that the term "right of way" in a deed "can have two purposes: (1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway."  924 P.2d at 914 (citing Morsbach, 278 P. 686; Harris v. Ski Park Farms, Inc., 844 P.2d 1006 (Wash. 1993)); see also Roeder Co. v. K & E Moving & Storage Co., 4 P.3d 839, 841–42 (Wash. Ct. App. 2000).  The Court is persuaded that the term "right of way" in the second granting clause merely describes the land being conveyed to the railroad by way of the Smith Agreement and does not impose a limitation on the actual conveyance.  This conclusion is supported by both the substance of the Smith Agreement and the plain language of the second granting clause.

The Smith Agreement grants to Mr. Gilman (1) a 100 feet wide strip of land; (2) a 200 feet wide right of way; and (3) a 50 feet wide right of way, along with riparian rights and conditions to construct a wharf.[5]  See Pls.' Rep., Ex. A; Def.'s Cross-Mot., Ex. 6.  It is again unclear which of these grants purportedly applies to the land at issue in Plaintiffs' claim numbers 1, 2.A, 2.B, and 2.C, and the parties admit that the "50 feet wide right of

---

[5] Under Washington law, a court may look to extrinsic evidence along with the language of the deed itself to ascertain the intent of the parties, even in the absence of any ambiguity in the deed.  See Brown, 924 P.2d at 912; see also Roeder Co., 4 P.3d at 841 n.6.

way" was actually 100 feet wide when it was subsequently built, creating further ambiguity and uncertainty. Thus, the Court evaluates the Smith Agreement as a whole to conclude that Mr. Smith conveyed all his land to Mr. Gilman in fee simple, and that Mr. Gilman in turn conveyed said land to the railroad in fee simple. This conclusion is bolstered by the fact that the Smith Agreement explicitly states that Mr. Smith is the owner of the granted land "in fee simple," and the combination of multiple grants of land along with riparian rights and conditions to build a wharf favor the conveyance of "all the potential sticks in the bundle"—thus, a fee simple interest. See Kershaw Sunnyside Ranches, 126 P.3d at 24.

Relatedly, the second granting clause is not a traditional granting clause and is merely a shortcut to direct the parties to the grants of land described in the Smith Agreement. If Mr. Gilman desired to convey an easement to the railroad, he could have used much stronger limiting language in this granting clause such as "for all railroad and other right of way purposes", "to be used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same",[6] "the intention being to convey herein a right of way", or other similar language found in other deeds that created the presumption of an easement conveyance under Washington law. See, e.g., Roeder Co., 716 P.2d 855; Kershaw Sunnyside Ranches, 126 P.3d 16; Biles, 32 P. 211; Beres, 97 Fed. Cl. 757. Absent this express limiting language in either the first or second granting clauses, together with the fact the Gilman Deed is "substantially in" the form of a bargain and sale deed, the Court finds that each granting clause in the Gilman Deed presumes the conveyance of a fee simple interest.

> 2. Other Language in the Gilman Deed Does Not Limit the Conveyance to an Easement.

Having determined that the granting clauses in the Gilman Deed create the presumption of a fee simple conveyance to the railroad, the Court now analyzes the remainder of the Gilman Deed under the Brown factors to determine whether any additional language rebuts this presumption and instead expresses the parties' intent to convey only an easement.

The first four Brown factors are examined together and look to the granting clause for any limiting language that suggests the intent to convey only an easement. See Haggart, 108 Fed. Cl. at 88; Brown, 924 P.2d at 912. For the reasons explained above, the Court

---

[6] The Washington Supreme Court in Kershaw Sunnyside Ranches held this specific limiting language in the granting clause to be particularly indicative of the intent to convey an easement. 126 P.3d at 25. This language is not present in either of the Gilman Deed's granting clauses, or, for that matter, anywhere else in the Gilman Deed.

finds that the language in the granting clauses favor the conveyance of a fee simple interest to the railroad.  The Court also notes that there is no language in either clause that grants "only the privilege of constructing, operating, or maintaining a railroad over the land", further evidencing the intent to convey a fee simple interest.  See Brown, 924 P.2d at 912.

The fifth Brown factor asks whether the deed contains a reverter clause "providing that if the railroad ceased to operate, the land conveyed would revert to the grantor."  Id. No such clause exists anywhere in the Gilman Deed, thus favoring the conveyance of a fee simple interest.[7]

The sixth Brown factor asks "whether the consideration expressed was substantial or nominal."  Id.  The total stated consideration for the Gilman Deed is $525,000, which was a substantial sum of money in the State of Washington in 1885.  See Def.'s Cross-Mot. at 18; Pls.' Mot., Ex. F.  While the stated consideration alone is not dispositive of the property interest conveyed, this factor certainly weighs in favor of a fee simple conveyance.

The seventh Brown factor asks whether the deed "did or did not contain a habendum clause" and asks the court to examine "many other considerations suggested by the language of the particular deed."  924 P.2d at 912.  The Gilman Deed does contain a habendum clause, which states the following:  "[t]o have and to hold all singular the said premises, together with appurtenances, unto the said party of the second part and its successors and assigns forever."  Pls.' Mot., Ex. F; Def.'s Cross-Mot., Ex. 4.  Like the granting clauses, the Gilman Deed's habendum clause and legal description do not contain any limiting language rebutting the presumption of a fee simple conveyance.  The deeds Plaintiffs rely on here that the Washington Supreme Court found to convey easements are readily distinguishable from the Gilman Deed.  For example, the deed at issue in Reichenbach contained a habendum clause with similar language to the Gilman habendum clause, but notably added the following limiting language: "so long as the same shall be used for the operation of a railroad."  38 P. at 1126.  Similarly, the habendum clause in the deed at issue in Pac. Iron Works v. Bryant Lumber Co. added to the end of the clause, "for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors, their heirs, executors, administrators or assigns."[8]  111 P. 578, 579 (Wash. 1910).  Further, the Lunn Deed in Haggart was captioned, "Right of Way Deed"

---

[7] The Court in Haggart held that the absence of any such reverter clause rendered this factor inapplicable. 108 Fed. Cl. at 88.  This Court disagrees.  Instead, the absence of such a reverter clause supports the conveyance of a fee simple interest, otherwise, this factor would be one-sided and meaningless.

[8] It is worth noting that the granting clauses of both deeds in Reichenbach and Pac. Iron Works also contained additional limiting language that, when combined with the limitations in the habendum clauses— limitations, the Court notes, that are not present in the Gilman Deed's habendum clause—supported the conveyance of an easement.  See Reichenbach, 38 P. at 1126; Pac. Iron Works, 111 P. at 579.

and contained the following limiting language in its legal description: "neither they nor any person . . . shall have any claim or demand either in law or equity against said Railway Company because of the construction[,] operation or maintenance of its said Railway through said lands." 108 Fed. Cl. at 92–93; see also Pls.' Mot. at 30–32. Again, there is no such limiting language in the Gilman Deed's habendum clause, legal description, or anywhere else in the deed. As such, the Court finds that there is not enough evidence in the remainder of the Gilman Deed to rebut the presumption that the grantor intended to convey a fee simple interest to the railroad.

The Court is also persuaded by the Government's argument that the subsequent actions of the parties support the conveyance of a fee simple interest to the railroad. First, the fact that the portions of the railroad corridor adjoining Plaintiffs' land at issue in this case were specifically excepted (and thus excluded) from the subsequent platting of land for "Gilman's Addition to the City of Seattle" indicate that these portions of land were not subject to a right of way easement and were instead granted in fee simple. See Def.'s Cross-Mot. at 19–20; see also Lucier v. United States, No. 16-865L, 2018 WL 2471404, at *37 (Fed. Cl. June 1, 2018). Additionally, that Argonaut received three out of five parcels of its land directly from the railroad (for purposes of the Gilman Deed, only Claim Nos. 2.B and 2.C) strongly suggests that the railroad owned these parcels in fee simple and thus, were conveyed such parcels in fee simple by the Gilman Deed. See Def.'s Rep. at 12–13.

Finally, the Court acknowledges—and the Government concedes—that the manifest purpose of the Gilman Deed was to convey land to the Seattle, Lake Shore and Eastern Railway Company to be used for a railroad. See id. at 9; see also Def.'s Cross-Mot. at 21–22. However, as the Washington Supreme Court held in Brown, "[w]hile the manifest purpose of the deeds [may be] to convey land for railroad lines, railroads have never been prohibited from holding rights of way in fee simple." 924 P.2d at 915 (citing Morsbach, 278 P. 686). For the reasons explained above, the Court finds that while the parties may have been motivated to convey land to the railway for the purposes of building rail lines, the plain language of the Gilman Deed does not express an intent to limit the conveyance to an easement. Rather, the language in the deed and the surrounding circumstances indicate that the grantor intended to convey a fee simple interest to the railroad.

    B. <u>Argonaut Does Not Have a Cognizable Property Interest in the Remaining Portions of the Rail Corridor Adjacent to its Property Because the Ross Deed Conveyed the Rail Corridor in Fee Simple.</u>

The pertinent language in the Ross Deed is as follows:

> Witnesseth said party of the first part and in consideration of the sum of One Dollar, lawful money of the United States of America, to her in hand paid by the said party of the second part the receipt whereof is hereby acknowledged does by these presents grant, bargain, sell and convey unto the said party of the second part, and its successors and assigns, forever, a tract of land extending Fifty (50) feet on both sides of the center line of the Seattle, Lake Shore and Eastern Railway, as the said line is now located on and over the John Ross Donation Claim.
>
> . . .
>
> To have and to hold, all and singular the said premises, together with the appurtenance unto the said party of the second part, and to its successors and assigns forever, for the use and purpose of the part of the second part, for track and roadway for said railway and the proper appurtenance to such track and roadway.

Pls.' Mot. at 16–17, Ex. G; Def.'s Cross-Mot. at 22–23, Ex. 5.  As explained above, the Court will first examine the granting clause of the deed and then turn to the <u>Brown</u> factors to analyze the remainder of the deed.

> 1. <u>The Ross Deed's Granting Clause Supports the Rebuttable Presumption that the Deed Conveyed a Fee Simple Interest.</u>

Like the Gilman Deed, the Ross Deed is also "substantially in" the statutory form for a bargain and sale deed under Washington law because it purports to "bargain[], sell[], and convey[]" a tract of land "for and in consideration" of a certain sum of money "in hand paid." Was. Rev. Code § 64.04.040 (formerly Excerpt of Laws of Washington Territory, 1886 p. 178 § 4).  Based on the Washington case law discussed in detail above, the Ross Deed conveyed a fee simple interest to the railroad because there is no limiting language whatsoever in the granting clause, and there is insufficient evidence in the remainder of the deed to overcome the presumption of a fee simple conveyance.

The granting clause of the Ross Deed coveys "a tract of land extending Fifty (50) feet on both sides of the center line of the Seattle, Lake Shore and Eastern Railway, as the said line is now located on and over the John Ross Donation Claim."  Pls.' Mot., Ex. G; Def.'s Cross-Mot., Ex. 5.  Like the first granting clause in the Gilman Deed, the Ross Deed's granting clause conveys a definite "tract of land" with no conditions or limitations attached.  Moreover, there is no mention of the term "right of way" or any other limiting

language that has been held to favor the conveyance of an easement anywhere in the granting clause. Plaintiffs' argument that the phrase "on and over" is indicative of an intent to convey an easement is unpersuasive. In fact, the Washington Supreme Court in Brown explicitly held that "[w]hile . . . 'over and across' [or similar] language may be consistent with the grant of an easement, it is equally possible the parties used 'over and across' simply to locate the right of way." 924 P.2d at 914. Without any further limiting language in the granting clause, the Court finds that the phrase "on and over" was likely used merely to locate the tract of land being conveyed. Thus, since the Ross Deed is a bargain and sale deed with no limiting language in its granting clause, the Court finds that the Ross Deed's granting clause presumes the conveyance of a fee simple interest.

>    2.    Other Language in the Ross Deed Does Not Limit the Conveyance to an Easement.

The Court also finds that there is insufficient evidence in the remainder of the Ross Deed to overcome the presumption of a fee simple conveyance. For the reasons explained above, the Court holds that the first four Brown factors support a fee simple conveyance because there is no limiting language in the granting clause. The fifth Brown factor also favors a fee simple conveyance, as there is no reverter clause in the deed providing a reversion back to the grantor "if the railroad ceases to operate." Id. at 912.

The sixth Brown factor tends to favor the conveyance of an easement, since the stated consideration is only $1. However, as the Court notes above, the stated consideration alone is not dispositive of the property interest conveyed and many times is not an accurate representation of the actual consideration paid.[9]  See Hanson Indus., Inc. v. Cnty. of Spokane, 58 P.3d 910, 917 (Wash. Ct. App. 2002) ("[T]he consideration actually paid may or may not be the amount stated in the deed. By itself, therefore, consideration is unreliable as a guide." (citing Brown, 924 P.2d 908)).

Plaintiffs argue that the seventh Brown factor favors the conveyance of an easement because the Ross Deed's habendum clause contains limiting language. Pls.' Mot. at 33. The habendum clause states, "[t]o have and to hold, all and singular the said premises, together with the appurtenance unto the said party of the second part, and to its successors and assigns forever, for the use and purpose of the part of the second part, for track and roadway for said railway and the proper appurtenance to such track and roadway." Def.'s Cross-Mot., Ex. 5; Pls.' Mot., Ex. G. Plaintiffs contend that the purpose language related to "track and roadway for said railway and the proper appendages to such track and roadway" clearly expresses an intent to convey only an easement. See Pls.' Mot. at 33.

---

[9] The Government notes that the record suggests the actual consideration paid for the Ross Deed was $400, not $1. See Def.'s Cross-Mot. at 25.

The Court disagrees. At best, this language is a vague articulation of the parties' general motivation for conveying the land to the railroad, not a limitation on that conveyance. See Brown, 924 P.2d at 915; Morsbach, 278 P. 686. This conclusion is reinforced by the fact that there is no other limiting language anywhere in the deed; the term "right of way" appears nowhere in the deed, and the deed is completely devoid of any of the other limiting language that the Court has discussed in detail above evidencing an intent to convey only an easement. What is more, the deed not only conveys a definite "tract of land" to the railroad, but also "the reversion and reversions, remainder and remainders" that go along with the land, indicating an intent to convey "all the potential sticks in the bundle" and thus, a fee simple interest.[10] See Kershaw Sunnyside Ranches, 126 P.3d at 24; Def.'s Cross-Mot. at 25, Ex. 5.

For all these reasons, the Court finds that the Ross Deed conveyed a fee simple interest to the railroad.

Conclusion

For the reasons stated above, the Court finds that neither 1100 W. Ewing nor Argonaut have a property interest in the relevant segments of the rail corridor in dispute. Since the Plaintiffs failed to satisfy the first step of the three-part liability test laid out in Ellamae Phillips Co., the Government cannot be found liable for a Fifth Amendment taking under the Trails Act. Thus, the Court GRANTS the Government's cross-motion for summary judgment and DENIES the Plaintiffs' motion for partial summary judgment. All other pending motions are denied as moot. The clerk is directed to enter judgment accordingly. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>THOMAS C. WHEELER<br>Judge

---

[10] Plaintiffs are incorrect in reading this language to confer reversionary rights to Ms. Ross. See Pls.' Mot. at 33. Rather, the plain language of the deed indicates that the reversionary rights were granted to the railroad *together* with the tract of land.